NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOUBLE-TAKE, INC. | : | |
| Plaintiff, | : | CIVIL ACTION NO. 07-1958 (JLL) |
| v. | : | **OPINION** |
| NEVERFAIL GROUP LTD., and NEVERFAIL, INC. | : | |
| Defendants. | : | |

**LINARES**, District Judge.

This matter comes before the Court on Defendants Neverfail Group Ltd. and Neverfail, Inc.'s (collectively "Neverfail" or "Defendants") motion to dismiss Plaintiff Double-Take, Inc.'s ("Double-Take" or "Plaintiff") complaint (the "Complaint") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and for improper venue. Plaintiff moves in the alternative to transfer the case pursuant to 28 U.S.C. § 1404(a). The Court decides the instant motion on the submission of the parties, without oral argument. Fed. R. Civ. P. 78. For the reasons set forth herein, Defendants' alternative motion is granted, and this case is transferred to the Western District of Texas pursuant to 28 U.S.C. § 1406(a).[1]

---

[1] Because the Court grants Neverfail's alternative motion, the Court will not consider the motion to dismiss except to the extent an analysis of personal jurisdiction is necessary to make a determination on the motion to transfer.

I.  **Factual and Procedural History**[2]

Plaintiff Double-Take, Inc., a Delaware corporation with Massachusetts and New Jersey addresses, manufactures and sells data backup and recovery software (the "Software"). (Compl. ¶¶ 1, 9.) Double-Take markets and sells its software under its own name and has used the Double-Take trademark ("DT Mark") in connection with the Software since 1995. (Id. at ¶¶ 9-10.) Double-Take originally operated under the name Network Specialists, Inc. and then later as NSI Software, Inc. (collectively, the "NSI identities"). (Id. at ¶ 12.) Due to the brand recognition of the DT Mark and the Software, the company began doing business under its current name in 2006. (Id.) However, Double-Take continues to be known by both NSI identities, uses them in transacting business, and possesses common-law and federal trademarks in both. (Id.)

Defendants Neverfail Group Ltd. – a company organized and existing in the United Kingdom – and Neverfail, Inc., a wholly-owned subsidiary of Neverfail Group Ltd. organized and existing under Delaware law with its principal place of business in Austin, Texas, manufacture, advertise, distribute and sell the same type of software as Double-Take. (Id. at ¶¶ 2-3, 13.) As Plaintiff maintains, Defendants have perpetrated the following alleged acts giving rise to the Complaint:

- Including <meta name="keywords" content=". . . NSI Double Take...."/> in the metadata on Defendants' website (id. at ¶ 15);

- Commissioning and paying for a "promotional piece" that compares Defendants' products to those Double-Take's Software and the software of a third-party competitor

---

[2] The facts recited herein are taken from the Amended Complaint and are assumed true for purposes of this motion. In crafting this factual and procedural history, the Court relies on the operative complaint as well as the affidavits and exhibits submitted by the parties. See, e.g., Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

2

(id. at ¶ 16) and contains false and misleading statements (see id.),[3] but failing to disclose its sponsorship of the study at any point (id.; id. at Ex. C); and

- Paying various online search engines to use the DT Mark as a keyword such that when a user searches the DT Mark or the NSI identities' registered trademarks, the Neverfail site pops up as a "sponsored link." (Id. at ¶ 18.)

In an October 27, 2006 letter, Double-Take apprised Neverfail of the various problems and concerns it harbored about the report, including that Double-Take believed the posted "study" was "false and misleading." (Id. at ¶ 17, Ex.)[4] Neverfail responded on November 2, 2006, stating that it believed statements in the report to be truthful and that it had "clarif[ied] the information [on its] web-site" by "revis[ing] the press release displayed on its website." (Id. at ¶ 18, Ex. D.)

On April 26, 2007, Plaintiff filed a nine-count complaint, asserting federal (1) trademark infringement, (2) false advertising, (3) unfair competition, (4) dilution and claims under New Jersey State law for (5) trademark infringement, (6) dilution, (7) unfair competition, (8) trade disparagement, and (9) violation of the New Jersey Consumer Fraud Act. Defendants responded on September 7, 2006 with the motion currently before the Court, stating that "virtually all of the alleged offensive conduct originated and was directed from Texas," the Complaint was devoid of specifics concerning the events at issue occurring in New Jersey, and that Defendants' maintain

---

[3] Plaintiff maintains that Neverfail fails to divulge in the study that the comparison was between an out-dated version of Plaintiff's product and the latest version of its own product. (Id. at ¶ 16). Furthermore, Plaintiff had allegedly supplied the study's author with the latest version of its product upon the author's assurances that he would use said product for a published report. However, the author explained in the report that he was unable procure a "demo" version of Plaintiff's product. (Id.)

[4] Plaintiff attached its October 27, 2006 correspondence, but did not assign it an exhibit letter or number; therefore, the Court will simply refer to the letter as "Ex."

3

*de minimus* or no contacts with New Jersey. (Def. Br. at 3.) Defendants also assert that the lack of personal jurisdiction makes venue inappropriate in this District. In the alternative, Defendants move the Court to transfer this action to the Western District of Texas on grounds of *forum non conveiens*. Plaintiff opposes the motion in its entirety.

## II.    Legal Standard

Rule12(b)(2) of the Federal Rules of Civil Procedure states that a defendant may move to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Once a defendant has asserted a motion to dismiss, the plaintiff carries the burden of "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Provident Nat'l. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). The Third Circuit has held that "[w]hen a Defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." Mellon Bank (East) P.S.F.S., Nat'l Assn. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). To meet said burden, plaintiff must present a *prima facie* case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Id. In evaluating a movant's motion to dismiss pursuant to Federal Rule 12(b)(2), "courts must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Machulsky v. Hall, 210 F. Supp. 2d 531, 531 (D.N.J. 2002) (citing Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

A district court may exercise personal jurisdiction over a nonresident of the forum only to the extent authorized by the forum state's long-arm statute. M. Eagles Tool Warehouse v. Fisher Tooling, 205 F. Supp. 2d 306, 311 (D.N.J. 2002). New Jersey's long-arm statute permits the

4

exercise of personal jurisdiction over a non-resident defendant to the extent of the Fourteenth Amendment of the United States Constitution. N.J. Sup. Ct. R. 4:4-4(c)(1). See also Weber v. Jolly Hotels, 977 F. Supp. 327, 334 (D.N.J. 1997). The Fourteenth Amendment requires (1) that the "defendant ha[ve] constitutionally sufficient 'minimum contacts' with the forum," id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)), and (2) that "subjecting the defendant to the court's jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

A court may exercise either "general" or "specific" personal jurisdiction over a defendant. General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum state. Eagles Tool Warehouse, 205 F. Supp. 2d. at 312 n.8 (citing Retick v. Manfred, 238 F.3d 248, 255 (3d Cir. 2001)). Specific jurisdiction arises only when the plaintiff's claim is related to, or arises out of, the defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). In such a case, a defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state" such that "[it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Using this framework, the Court will turn to Defendants' motion.

**III.   Discussion**

    **A.   Specific Jurisdiction**

Defendants state that Plaintiff cannot establish either general or specific jurisdiction over them. Plaintiff argues that because it is able to establish the existence of specific jurisdiction, it need not address whether general jurisdiction lies. (Pl. Br. at 18 n. 3; see id. at 11-20.)

5

Consequently, the Court only examines whether it can exercise specific personal jurisdiction over Neverfail.

Defendants contend that they are not subject to specific jurisdiction in this District as the only connection they have to New Jersey is through their "passive website," which is used only for advertisement and is not targeted to New Jersey residents. (Def. Br. at 11.) Plaintiff's arguments in support of an exercise of specific jurisdiction are two-fold: personal jurisdiction exists, according to Double Take, because (1) Defendants have sold and advertise their products in New Jersey and (2) Defendants' website is directed at New Jersey residents. (Pl. Br. at 11-14, 19-20.)

First, Plaintiff's reliance on Defendants' sale of "*any* products" in the forum state – here, sales constituting 4% of Neverfail's total sales – to establish specific jurisdiction is inapposite. It is well-established in the Third Circuit that personal jurisdiction lies "where the 'passing off' occurs, i.e., where the deceived customer buys defendant's product in the belief that he or she is buying plaintiff's product." Ceramica Falcinelli, S.P.A. v. American Marazzi Tile, Inc., No. 99-1223, 1999 WL 795479, at *4 (D.N.J. Sept. 29, 1999) (quotations omitted). See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) ("a cause of action for trademark infringement arises where the passing off occurs"); Tefal, S.A. v. Products Int'l Co., 529 F.2d 495, 496 n.1 (3d Cir. 1976). However, the facts alleged in the Complaint do not evidence that the sale of Neverfail's software products in New Jersey is the point where the "passing off" occurred. It is Defendants' website–containing the metadata and the study at

issue–that is at the center of the "passing off," not Neverfail's products.[5] Plaintiff further contends that Neverfail targets New Jersey customers through its advertisements, "through their website and other means." (Pl. Br. at 16.) The Court finds that the Neverfail's website advertisements to which Plaintiff cites – the six New Jersey-based Neverfail clients listed on the customer list (Declaration of Walter B. Stillwell ("Stillwell Decl."), ¶ 2, Ex. 1), a case study discussing Neverfail's work for a New Jersey customer (id. at ¶ 4, Ex. 3), and press releases containing references to Neverfail's "New Jersey partners" (id. at ¶ 3, Ex. 2) – does not demonstrate that Defendants "purposefully availed" themselves of the privilege of conducting business in New Jersey.

Second, in order for personal jurisdiction to exist over Neverfail based on its website, Defendants must have "intentionally target[ed] the site to the forum state, and/or knowingly conduct[ed] business with [the] forum state residents via the site" to have met the "purposeful availment" requirement. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003) (emphasis added). Plaintiff points to a press release posted on Defendants' website that quotes "a Neverfail partner based in New Jersey" (Stillwell Decl., ¶ 3, Ex. 2), the customer list listing six New Jersey-based companies (id. at ¶ 2, Ex. 1), and the case study involving a New Jersey client (id. at ¶ 3) to demonstrate that Neverfail has intentionally targeted New Jersey residents through its website. Plaintiff does not suggest in the Complaint that Neverfail conducts business with New Jersey residents via the website – in fact, Defendants specifically do not sell their products through the website. (Def. Br. at 11.) The Court finds that merely including the

---

[5] Nowhere in the Complaint does Plaintiff allege that Neverfail's products themselves infringe the Software.

word "New Jersey" on the website one or two times and/or touting partnerships with certain New Jersey businesses does not magically create jurisdiction over the Defendants.[6] Thus, the Court may not exercise specific personal jurisdiction over the Defendants.

**B.      Venue**

Defendants argue that because this Court cannot maintain *in personam* jurisdiction over them, venue is likewise improper in this District. Under 28 U.S.C. § 1391(b), venue is appropriate in a judicial district in which any defendant is found to reside. 28 U.S.C. § 1391(b)(1). Corporate defendants "shall be deemed to reside in any judicial district in which [they] are subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). For the reasons specified in Part III.A, *supra*, this Court cannot exercise personal jurisdiction over Defendants and consequently, venue does not appropriately lie in this District.

**C.      Transfer**

Neverfail has moved, in the alternative to its 12(b)(2) motion to dismiss, to transfer venue to the Western District of Texas pursuant to 28 U.S.C. § 1404(a). (Def. Br. at 20.) As a threshold matter, "[i]n federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995); see Rojas v. Trans States Airlines, Inc., 204 F.R.D. 265, 269 (D.N.J. 2001). The former applies to transfer of a case in which the original and transferee forum are both proper while the latter applies to situations in which the original forum is improper, but the court may dismiss or transfer the case to a different venue. Jumara, 55 F.3d at 878; see Van Dusen v. Barrack, 376 U.S. 612, 634

---

[6] Since Plaintiff has failed to meet its burden in establishing "minimum contacts," the Court need not examine whether an exercise of jurisdiction would comfort with traditional notions of fair play and substantial justice.

8

(1964) ("Although both section[] [1404(a) and 1406(a)] were designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege"); Oliver v. Third Wave Tech., No. 06-6192, 2007 WL 2814598, at *5 (D.N.J. Sept. 25, 2007) (Linares, J.) ("[W]here venue would remain improper in the forum court . . ., a party may bring a motion to transfer or dismiss pursuant to 28 U.S.C. § 1406(a)"). Defendants contest the appropriateness of venue in this Court and thus, should have made their motion to transfer pursuant 28 U.S.C. § 1406. Since the Court determined above that venue is indeed improper in this forum, section 1406 governs this action.

28 U.S.C. § 1406(a) provides: "The district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court retains broad discretion over the decision to transfer an action. Gottleib v. U.S., No. 05-3803, 2006 WL 2591069, at *2 (D.N.J. Sept. 8, 2006); see Tyson v. Pitney Bowes Long-Term Disability Plan, No. 07-3105, 2007 WL 4365332, at *1 (D.N.J. Dec. 11, 2007) (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973)). Unlike a decision to transfer pursuant to section 1404, a district court reviewing a section 1406 motion to transfer need not balance the public and private interests. Gottleib, 2006 WL 2591069, at *2.

In analyzing whether an action should be transferred under section 1406, a court "must simply determine a venue in which the action originally could have been brought that serves the interest of justice." Rojas, 204 F.R.D. at 269. An action "could have been brought" if (1) venue is proper in the transferee district and (2) personal jurisdiction may be exercised over the

9

defendant in said district. Gottleib, 2006 WL 2591069, at *2; see Rojas, 204 F.R.D. at 269-70.[7] As the purpose of section 1406 is to "remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits," Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962), "transfer is favored over dismissal," Gottleib, 2006 WL 251069, at *2.

Transfer of this action to the Western District of Texas is appropriate.[8] First, this action could have been brought in the Western District of Texas. Plaintiff could have originally filed the Complaint in said forum, as a substantial portion of the events giving rise to the decisions and actions at issue occurred there. See 28 U.S.C. § 1391(b)(2); Def. Br. at 22-24; Declaration of David French ("French Decl."), ¶ 10. Furthermore, Neverfail, Inc. maintains its principal place of business in Austin, a city within the Western District of Texas, also making it a proper forum. See 28 U.S.C. § 1391(b)(3). Second, transfer serves the interest of justice as a significant number of potential witnesses reside in the transferee district (French Decl. at ¶ 12) and the documents and corporate records regarding Plaintiff's claims are located in the Neverfail corporate office located in the transferee district (id. at ¶ 11). See Gottleib, 2006 WL 2591069, at *3. As there is no indication that Plaintiff filed the action in the District of New Jersey with questionable purpose or motive, transfer, not dismissal, is warranted to "expedite the resolution of [Plaintiff's] claims by eliminating the delays associated with refiling. . . ." Id., at *4.

---

[7] A transfer is not "in the interest of justice" when a plaintiff commences the action in the improper venue for questionable purposes, to intentionally harass the defendant, or to forum-shop. Gottleib, 2006 WL 2591069, at *2.

[8] The Court recognizes that New Jersey courts retain an interest in protecting its residents from trademark infringement occurring within the state. Such an interest does not outweigh the interest of justice present here as the Court has not found that the "passing off" of Defendants' products necessarily took place inside New Jersey's borders. See Part. II.A.

## IV.     Conclusion

For the aforementioned reasons, Defendants' motion in the alternative to transfer this action is granted and the case is transferred to the Western District of Texas pursuant to 28 U.S.C. § 1406(a). An appropriate Order accompanies this Opinion.

Dated: March 17, 2008

/s/ Jose L. Linares
Jose L. Linares
United States District Judge